UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MALINDA K. R.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 3:22-CV-5686-DWC

ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned.

After considering the record, the Court concludes the Administrative Law Judge (ALJ) erred when she failed to adequately assess some of the objective medical evidence. As these assessments directly impact the residual functional capacity (RFC) assessment, the ALJ's errors were not harmless and this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on November 6, 2015, alleging a disability onset date of September 10, 2015. Administrative Record (AR) 1262. Her date last insured was September 30, 2018. AR 1272. Therefore, the "relevant period" for purposes of her claim is September 10, 2015 through September 30, 2018.

Her application was denied initially and on reconsideration, and on October 8, 2019 this Court reversed and remanded her case for further proceedings. *Malinda K. R. v. Commissioner of Social Security*, Case No. 3:19-cv-5310-DWC.

Following a second hearing, on November 4, 2020 the ALJ again denied Plaintiff's application. AR 1323. This time Plaintiff appealed directly to this Court, and on July 12, 2021 this Court again reversed and remanded Plaintiff's case for further proceedings. *Malinda K. R. v. Commissioner of Social Security,* Case No. 3:21-cv-5007-DWC.

On June 27, 2022 the ALJ issued another unfavorable decision, which Plaintiff now appeals directly to this Court. AR 1259-1285; 20 C.F.R. §§ 404.981, 416.1481.

## II. STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

### III. THE ALJ'S FINDINGS

In the ALJ's June 27, 2022 decision he found Plaintiff has the following severe impairments: myotonia congenita; fibromyalgia; carpal tunnel syndrome; restless leg syndrome; post-traumatic stress disorder; and, unspecified depressive disorder. AR 1259-1285; 20 CFR § 404.1520(c).

The ALJ determined Plaintiff's RFC enables her to perform light work as defined in 20 CFR § 404.1567(b), with the following additional limitations: occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; frequent bilateral overhead reaching; frequent bilateral handling, fingering, and feeling; occasional exposure to extreme vibrations and hazards such as unprotected heights and dangerous machinery; no conveyer belt-paced production requirements; incidental public and coworker interactions and no tandem work; the capacity to understand simple instructions and perform tasks consistent with unskilled work; and, the need for a predictable, stable work environment where goals and directives are set by others and standard work breaks are provided. AR 1270.

In addition, the ALJ found Plaintiff had the alternative RFC to perform light work as defined in 20 CFR § 404.1567(b) except she was limited to jobs providing a sit/stand at-will option with only occasional climbing of ramps and stairs; never climbing ladders, ropes, or

scaffolds; occasional stooping, kneeling, crouching, and crawling; frequent bilateral overhead reaching; frequent bilateral handling, fingering, and feeling; occasional exposure to extreme vibrations and hazards such as unprotected heights and dangerous machinery. AR 1270. In addition, with this RFC Plaintiff would be able to understand simple instructions and perform tasks consistent with unskilled work where there are no conveyer belt paced production requirements; where standard work breaks are provided; only incidental public and coworker interactions and no tandem work is required; and the work environment is predictable and stable, and goals and directives are set by others. AR 1270.

Finally, the ALJ found as a second alternative that through the date last insured, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a) except occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; frequent bilateral overhead reaching; frequent bilateral handling, fingering, and feeling; occasional exposure to extreme vibrations and hazards such as unprotected heights and dangerous machinery. She is able to understand simple instructions and perform tasks consistent with unskilled work where there are no conveyer belt paced production requirements, where standard work breaks are provided; with only incidental public and coworker interactions and no tandem work; and working in a predictable, stable work environment where goals and directives are set by others. AR 1270-1271.

At step five of the sequential evaluation the ALJ concluded that a person of Plaintiff's age, with her education, work experience, and RFC, remained capable of performing jobs that exist in significant numbers in the national economy such as Inspector and Hand Packager, Garment Sorter, Small Products Assembler I, Final Assembler, Table Worker, and Masker. AR 1284; 20 C.F.R. §§ 416.1520(a)(4)(v), 416.1520(g).

## IV. DISCUSSION

Plaintiff claims the ALJ erred by failing to provide legally sufficient reasons to reject the medical opinions of Keri Tarantino, Psy.D., and Eddie Espanol, M.D., and requests remand for further proceedings. *See generally,* Dkt. 10. Defendant maintains the ALJ's decision was legally sound, based upon substantial evidence, and should be affirmed. *See generally*, Dkt. 11.

### A. Legal Standard

Plaintiff filed her claim before March 27, 2017, therefore the prior regulations apply to her case. *See* 20 C.F.R. § 404.1527.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

### B. Keri Tarantino, Psy.D.

On June 24, 2016 Keri Tarantino, Psy.D. (Tarantino) conducted a clinical interview and a mental status exam (MSE) and reviewed medical records. AR 407-411.

Tarantino noted Plaintiff's self-report of "trauma from her childhood, re-experiencing this trauma through intrusive memories and flashbacks, significant hyperarousal symptoms,

including panic-like symptoms, avoidance of situations that remind her of previous trauma, difficulty sleeping, decreased interest and activities, low energy, and poor concentration." AR 408. Tarantino noted Plaintiff's report that her "mood symptoms have intensified in the past 4 years and this is related to an increase in health concerns at that time." *Id*. She further noted that Plaintiff "is self-isolating," and that "even when she is watching movies and television, she does have a difficult time sustaining concentration for these on a routine basis." AR 410.

Tarantino observed that Plaintiff's affect "was congruent with her stated mood," which was "pretty anxious." AR 409. She diagnosed Plaintiff with chronic post-traumatic stress disorder and an unspecified depressive disorder. AR 411.

Tarantino opined that Plaintiff's remote memory was mildly impaired; her ability to interact with coworkers and the public was likely moderately impaired; her ability to maintain regular attendance and complete a normal workday without interruption from psychologically based symptoms was moderately impaired; and her ability to deal with the usual stress encountered in the workplace where others are around was markedly impaired. AR 411.

The ALJ gave Tarantino's "opinion low weight, given that it is partially supported by [] Tarantino's examination findings, is significantly based on [Plaintiff's] subjective reporting, and is inconsistent with the record available at the time of this decision." AR 1279.

According to Plaintiff the ALJ erred by rejecting Tarantino's opinion based upon inconsistency with the record and Plaintiff's discredited self-reports because "this Court has already found that both of these rationales are not supported by substantial evidence." Dkt. 10 at 3 (citing *Malinda K. R. v. Commissioner of Social Security*, 3:19-cv-5310-DWC).

According to Defendant, inconsistency with the record was a valid reason to discredit Tarantino's opinion pursuant to 20 C.F.R. § 404.1527(c)(4)(stating an ALJ must consider

whether an opinion is consistent with the record as a whole). Dkt. 11 at 3. Defendant argues that contrary to Plaintiff's claims of intrusive memories, flashbacks, and "significant hyperarousal symptoms" stemming from childhood trauma, which she reported to Tarantino, the ALJ accurately found that the record contains few, if any, reports of such symptoms during Plaintiff's treatment history. *Id*. (citing AR 1280). The ALJ's review of the record showed that Plaintiff repeatedly presented without any significant mental or cognitive abnormalities. AR 1277 (citing 1077 (pleasant and in no acute distress), 1091 (presenting with good insight and judgment, euthymic mood, and normal speech with full thoughts), 1105 (presenting as pleasant), 1120-1121 (normal speech, complete thoughts, okay mood, euthymic affect, good judgment and insight, and no evidence of persecutory thoughts)).

Defendant further contends the ALJ correctly concluded Tarantino's opinion was based, in part, on Plaintiff's unreliable self-reporting. Dkt. 11 at 3. For example, Tarantino wrote that Plaintiff spent most of her time sleeping and watching Netflix, was self-isolating, and did not take care of children because her 12-year-old son prepared meals for himself. AR 1279, 410. But as the ALJ pointed out, just a few months before Tarantino's evaluation Plaintiff reported that she drove a car, shopped in stores, performed childcare, and walked her son to the bus stop. AR 1279, 204-206. And the ALJ found that on the very day Plaintiff was examined by Tarantino, she told Eddie Espanol, M.D., that her medications were "allowing her to be more functional, do things around [her] home, [and] take care of her child." AR 1279, 489.

Plaintiff is correct that on October 7, 2019 this Court concluded that "the record does not show [] Tarantino relied more heavily on Plaintiff's subjective testimony more than on other information and her own observations." *Malinda K. R. v. Commissioner of Social Security*, Case No. 3:19-cv-5310-DWC, Dkt. 12 at 6.

When Plaintiff appealed the ALJ's second denial of her claim to this Court, this Court concluded on July 12, 2021 that "to the extent there is any implied unsubstantiated reliance by the ALJ on a finding of inconsistency between [P]laintiff's report to [] Tarantino and to other providers, any such reliance is not a specific and legitimate reason based on substantial evidence in the record as a whole." *Malinda K. R. v. Commissioner of Social Security,* Case No. 3:21-cv-5007-DWC, Dkt. 18 at 8-9. Furthermore, upon this Court's own review of Tarantino's examination record in that case, the Court held:

> …Tarantino appears to have consciously attended to her task of making opinions regarding **only the specific limitations for which there is substantial support**, and provided very **specific and refined opinions** regarding limitations: For example, Dr. Tarantino opined that plaintiff "appears to have clear ability to reason and understand [and] have some adaptation skills, [while] remote memory is mildly impaired [and] recent and immediate memory are intact." AR 411. She also opined that sustained concentration and persistence appeared "adequate," and refrained from making any assessments regarding physical limitations. *See id*. Dr. Tarantino, however, provided very specific opinions regarding plaintiff's ability to interact with coworkers and the public, as well as **moderate limitations on plaintiff's ability to maintain regular attendance in the workplace and complete a normal workday or workweek without interruption**. *See id*. The ALJ did not provide any specific and legitimate reason not to adopt these opinions, and perhaps intended to adopt them, as argued by defendant.

*Id*. at Dkt. 18 at 9 (emphasis added).

With these prior rulings in mind the Court now finds for the third time that the ALJ's repeated reliance on Plaintiff's "unreliable self-reporting" is not a specific and legitimate reason based upon substantial evidence to reject Tarantino's opinion.

In addition, the Court finds the ALJ's determination that Tarantino's opinion is "inconsistent" with the record amounts to a re-purposing of the "unreliable self-reports" finding, because the inconsistencies the ALJ points out are inconsistent self-reports Plaintiff made to other providers but not to Tarantino; in other words, more subjective reporting. For example, the ALJ stated that a "few months" before Tarantino's evaluation Plaintiff "reported that she drove a

1    car, shopped, performed childcare and took her son to the bus", and that she gave birth to a new

2    baby. AR 1279. Yet, the ALJ found "no discussion" in Tarantino's evaluation "about taking her

3    new baby to medical appointments, shopping, or the fact that just two weeks before" Plaintiff

4    saw the baby's father. *Id*. The ALJ further noted that Plaintiff "did not tell" Tarantino she had a

5    partner, whom Plaintiff testified years later (at the September 9, 2020 hearing) had been present

6    for the first year of the baby's life. AR 1279-1280.

7        As the Court previously, unequivocally, rejected the finding that Tarantino's opinion

8    relied more heavily on Plaintiff's subjective testimony than on other information and her own

9    observations, and further determined that inconsistency between Plaintiff's report to Tarantino

10    and to other providers was also not a specific and legitimate reason to reject Tarantino's opinion,

11    the Court now finds for the second time that the ALJ's repeated reliance on Plaintiff's

12    inconsistent reporting to other providers is not a specific and legitimate reason based upon

13    substantial evidence to reject Tarantino's opinion.

14    **C.  Eddie Espanol, M.D.**

15        Eddie Espanol, M.D. (Espanol), was Plaintiff's treating physician. AR 277-285. In April

16    2016, Espanol completed a disability assessment and opined that Plaintiff "was able to do

17    sedentary work" with an inability to carry more than 10 pounds, sit for more than 30 minutes,

18    stand for more than 10 minutes, or climb, and that she needed continuous workplace breaks. *Id*.

19        The ALJ gave Espanol's opinion "low weight", explaining:

20        … it is partially supported by Dr. Espanol's treatment notes, is largely based on the
           claimant's subjective complaints, and is not consistent with the record available at
21        the time of this decision. In his treatment notes, Dr. **Espanol indicates that the
           claimant's functional limitations are largely based on her subjective reporting**
22        **and stated ability to perform her activities of daily living**. Additionally, Dr.
           Espanol determined that the claimant had a reduced range of motion, tenderness in
23        her knees, positive Tinnel's and Phalen's signs, and reduced strength in her wrists,
           right hip, knees, and ankles. However, Dr**. Espanol noted that the claimant**
24        **otherwise had no tenderness and full strength throughout, no swelling or**

> **deformity, no noted neurological or other significant physical abnormalities**, and no significant mental or cognitive abnormalities and repeatedly noted that she had only "mild symptomatic myotonia". (e.g. 3F 2-6; 4F 50-51; 11F 2, 4, 17). Further, given the extraordinary inconsistencies between the claimant's allegations and the record, as documented above, I cannot give this opinion more than low weight.

AR 1281 (emphasis added).

According to Plaintiff these reasons are erroneous because Espanol's opinion was based upon clinical findings, and Espanol never once stated that he simply credited Plaintiff's self-reports. Dkt. 10 at 4-5; AR 281-282.

This Court concurs with Plaintiff that the ALJ erroneously determined Espanol's opinion was based on Plaintiff's self-reports. While Espanol's report does contain a subjective history from Plaintiff (AR 278-279), it also contains a thorough objective exam (AR 280-282) and a detailed assessment and plan (AR 282). Espanol plainly found that Plaintiff's neuromuscular disorder, called "Myotonia Congentia" was progressing, and her symptoms were worse than when he saw her one year earlier. AR 282. Espanol pointed to his clinical findings, which he characterized as showing "progressive muscle weakness especially in the lower legs" and opined that Plaintiff's "potential for rehabilitation is low as this disease will only get worse", that Plaintiff's "functioning is worse as she has had to stop working and can do minimal ADLs with typical difficulty [sic] of fatigue" and that "she will likely need home health services to aid with her ADLs" in the future. *Id*. Moreover, Espanol clearly stated that Plaintiff was "still struggling with her pain and weakness in her legs causing her limited mobility and functioning" and that due to her "progressive neuromuscular disorder" she will continue taking narcotic pain medication, continue with physical therapies and other at-home therapies, and continue seeing her neurologist. *Id*.

These findings starkly contrast with the ALJ's incongruous conclusions about Espanol's opinion, and suggest the ALJ may have misinterpreted Espanol's findings as Espanol clearly determined Plaintiff does, in fact, suffer from a progressive disease involving the neurological system, which causes pain and weakness in the lower extremities by definition and as clinically determined by Espanol's examination of Plaintiff. In any event, the ALJ's failure to explain how he came to these conclusions so the Court might understand his reasoning is legally insufficient, and requires remand. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Therefore, the Court finds the ALJ failed to provide specific and legitimate reasons based upon substantial evidence to reject Espanol's opinion.

**D. The ALJ committed harmful error requiring remand for further proceedings.**

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

Here, the ALJ's rejection of Tarantino and Espanol's medical opinions were not "inconsequential" to the ALJ's denial of Plaintiff's claim because both medical opinions rated Plaintiff's functional capacity as significantly more limited than the ALJ included in any of the RFCs, set forth above. For instance, the vocational expert testimony at the September 9, 2020

hearing indicated that if Tarantino's opinion (that Plaintiff's ability to maintain regular attendance and complete a normal workday without interruption from psychologically based symptoms was moderately impaired) is credited, the ALJ may have found Plaintiff to be disabled. The Court notes the Vocational Expert (VE) testified, when asked whether a hypothetical person with the sedentary RFC would require two additional 15-minute breaks during the workday in addition to the standard 15-minute morning and afternoon breaks and half-hour lunch break, on a regular basis day after day, would be capable of sustaining employment:

> Okay. The [Dictionary of Occupational Titles] doesn't address that as far as breaks, I might add, but that would be beyond what's acceptable in competitive employment. When I have evaluated off-task related to working with employers, it's 10% of the workday, but it's spread out over the workday. So, having to – and they also require—or expect them to be at their workstation. So, 15-minute breaks, **two of those where they leave the workstation, would not be compatible with competitive employment.** I might also add that you mentioned lie down [sic] even though I mentioned that. I'm not sure—but that's not allowed anywhere anytime in the competitive labor market, **the ability to lie down would rule out competitive employment just in itself.**

AR 1467-1468 (emphasis added). The VE further testified that more than one unexcused absence per month on an ongoing basis would also rule out competitive employment for the hypothetical person described in the sedentary RFC. AR 1468-69.

If the ALJ had credited Tarantino's opinion he may have concluded that Plaintiff was disabled during the relevant period. Accordingly, these errors were not harmless. *See*, *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995))("We will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'").

Consequently, this matter must be reversed and remanded for reevaluation of Tarantino and Espanol's medical opinions, and reassessment of the five-step sequential evaluation.

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 12

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ improperly concluded that Plaintiff was not disabled. Accordingly, this matter is REVERSED and REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

Dated this 20th day of March, 2023.

David W. Christel
Chief United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 13